v. Governor of the State of Georgia, Attorney General, State of Georgia, 24-12289. And when everybody's ready, Mr. Petrani, you may proceed. I see that you have reserved some time for rebuttal. Thank you, Your Honor. May it please the Court. Paying bail is not protected by the First Amendment. It is not speech. It is not expressive. It is not close to expressive. The Supreme Court's decision in Rumsfeld v. Fair plainly controls this case, and the District Court grievously erred in holding otherwise. Now, it did that by looking to all of plaintiff's conduct except for paying bail. It looked to, for instance, their wearing T-shirts. I don't think that the context of what's going on outside of prison or on social media matters, no. I think that if it transforms what is otherwise a, you know, ordinary act into something that's inherently expressive, then sure. But what we're talking about here is someone in a jail paying money to a clerk. The fact that there might be plaintiffs or their colleagues posting on social media or in the parking lot saying certain things or wearing certain T-shirts, I do not think that that can somehow transform what is a... So, what's inherently expressive? Are you familiar with the Tinker case? I'm not. I'm vaguely aware of that case, Your Honor. I'm not sure what particular facts you're pointing to. The black armband. Yeah. So, you wear a black armband. What's inherently expressive about that? Yeah. So, I think in that particular case, you have, for one thing, you have a particular social environment, but also I don't think that there's anything you would take out of a black armband other than some sort of expression. People don't go around wearing black armbands for just, like, no reason. People do, in fact, pay bail for a very specific reason, which is to pay bail. That's why they're doing it. No. Why? No. What is... In fact, the district court in this decision provided several pages regarding the history of bail in our country, and so it is not just to pay money. What can you embrace in terms of the full history of bail in our country? Well, there's a number of points there, Your Honor. For one thing, the history that the district court is talking about and the history that the plaintiffs have put forward is certainly a history of people paying bail and maybe even doing it for charitable purposes, but that doesn't turn it into a history of the reasonable observer understanding it in all circumstances as inherently expressive. In fact, in Rumsfeld, the Supreme Court specifically held if you have to explain what you're doing through other speech, that means it's not inherently expressive. So all of this speech activity that plaintiffs are engaged in around the paying of bail, whether that be wearing T-shirts, holding banners, et cetera, that actually just demonstrates that it's not. Your Honor, I think that includes, I think, one of the church members who specifically raises money for the purpose of ensuring that people, for example, who are incarcerated because they can't pay $150 don't have to stay in jail for a whole year. Oh, and no one is suggesting that, first of all, that they're not allowed to do that. There's a limitation on the number of times that they can do it in a particular jurisdiction, and no one is suggesting it's not morally praiseworthy or something that people should be doing. The point is that doesn't make it inherently expressive when you pay the bail, and I think one thing that I'm very concerned with the context. I mean, they're doing a lot of things, right? You mentioned the T-shirts. They have the welcoming parties. They're going in. They're explaining who they are and so forth. Who is the reasonable observer? It certainly seems like the Georgia legislature understands what they were trying to do because they passed this law specifically, it seems like, to deal with what they were doing. So who is the audience, and on what are you basing your statement that a reasonable observer would not know the context, would not understand what they're trying to convey by paying the  Yeah, so for one thing, the reasonable observer is the person who's watching the person pay bail. And the reasonable observer, you cannot rely on someone's explanation to that person as what they're about to do or what they're trying to do. That's what Rumsfeld explicitly holds. Harvard made this exact same argument in Rumsfeld versus Fair. They said, look, when we deny military recruiters the ability to come on our campus, we send out emails explaining to people why. We explain to people what we're doing here, and the Supreme Court said not only does that not mean that this is inherently expressive, it means it's not inherently expressive because you have to explain it to people. The audience is the reasonable observer who might see the act. It's not just kind of the public at large. And even if it were I know you reference the Fair decision a lot, as I understand why you would. How do you deal with Spence versus Washington, though, which, again, says that we have to consider the context in this? Again, we're not denying that context matters. I mean, here's just one contextual point that's very important. This is happening in a jail. A jail is not a historic place of, you know, free expression or even being a forum for expression. It is literally the opposite of that. So that context really matters. A number of the decisions that you, you know, we would Would you use a location to take Judge Abudu's point where there is a history of paying bail for people who some organizations might think have been wrongly imprisoned? I don't deny that at all, Your Honor. But I think that Your Honor's questions are conflating two things. A history of charitable activity and a history of understanding something as inherently expressive are wildly different. So, for instance, there is an unimpeachable, long history of religious and other groups running hospitals and medical facilities and so forth for the poor, for the indigent, or for anyone who needs them. That doesn't mean that medical care then suddenly becomes expressive. And it doesn't mean it becomes expressive even if the history of these, you know, charitable acts is to say, look, we think it's terrible that the government is not doing its job in providing for these people, so we're going to do it through our hospitals and our medical facilities. Whatever message they happen to want to express through a particular thing does not mean that it's inherently expressive in that way. And here's For longer food, not bombs. Providing food to people not inherently expressive, but we found that the context there mattered. No. No. That's absolutely That's absolutely true, Your Honor. And I would point out that even in the follow-on case, the court held that in most contexts, even food service is not going to be inherently expressive. But that was based on a number of factors that were extremely particular to that case. And I would say the most important one by far is that they were in a public park where everyone could go and everyone could see what they were doing in a place that is historically associated with free speech and with these kinds of events. A jail is the opposite of that. The activity is not just happening in the jail. I mean, to your point, highlighting food, not bombs, there's information in the record that says, again, they wear t-shirts, they have celebration parties, they spend a lot of time talking about incarceration, mass incarceration, et cetera. So again, taking food, not bombs, especially with the caveats or the distinctions that Judge Jordan made in that opinion. How is it that context here does not matter? The context here is what can the reasonable observer see when they're watching someone pay for bail in the jail? So most of what Your Honor is referring to I don't even think is relevant because it's not something the reasonable observer would see. But even if they did, most of it is speech. And what Rumsfeld says is you cannot look to speech to determine that some conduct thereby is expressive. The opposite is true. If you have to look at the speech, it's not inherently expressive. And let me point out what this means. If it's inherently expressive to pay bail in these circumstances, it would mean that the reasonable observer not only would think that the person who happens to work for the plaintiffs is expressing a message inherently when they do this, but the bail bondsman right behind that person and the family member right behind that person are also inherently expressing a message. And none of us believe that's the case because we all know that the only reason anyone takes a message, to the extent they take a message at all, out of the plaintiff's actions is because of all the explanatory speech they're doing around it. You would not. Going back to the Spence case or even the Armband case, it seems like you're arguing that everyone has to understand the message that's intended to be conveyed in order for there to be first-amend protection. Is that your argument? It has to be the reasonable observer, Your Honor, and the reasonable observer can't have any special or particularized knowledge. That's what this Court and the Supreme Court have made clear. So it can't be that just certain people would take out of this, you know, a message. It has to be that the reasonable observer with no specialized knowledge watching the conduct would know there's some kind of message coming out of this. And in fact, they really need to have some generalized sense of what the message is. It doesn't have to be the exact, specific point-by-point message that they're trying to make, but it has to be some sort of understanding of that. And here, I mean, I don't even know what plaintiffs have put forward a lot of different messages. There's no way that a reasonable observer watching someone hand money over to a bail clerk is going to take any generalized message out of that unless they know all of the speech surrounding it, unless they have read the T-shirts and looked at the banners and seen the protesters and what they're protesting and so on and so forth. And again— I'm going to say, in just speaking for myself, that you lose on the expressive conduct argument. Has the State provided sufficient arguments related to its interest to also rule at this stage on those as well, whether you satisfied that burden? Well, Your Honor, even if this Court were to decide that somehow paying bail is inherently expressive, I don't think it would matter because this is a government program in a government facility. The State is allowed to not only decide what speech it wants to allow in its own programs, it's even allowed to viewpoint discriminate. Well, that's why we're here in the Court, because at the end of the day, even the State's decisions get reviewed, get judicial review. What are the interests, just to be clear, that the State has presented to support the reason why someone can only bail an individual out three times? Yeah, I think that the State is concerned about getting detainees to come to their hearings. I mean, this is the whole reason you have a bail system in the first place. But in the first place, by the judge, the defendant appears before the judge, the judge makes the decision, decides how much will assure the court of the person's presence, and then that bail gets paid. So how is the State's interest, that interest, undermined by allowing a church, a religious institution, making no money from this process? What is the undermining of the State's interest by allowing a religious entity to do that? Well, the inherent logic here is that someone's going to show up to a hearing because they have skin in the game. If you're concerned that the detainee is not, in fact, putting their own money on the line, and if you're concerned that a charity is putting the cash up and doesn't care if it disappears, then that would be a concern for them, this person showing up to be detained. Is this when the defendant's mother or father or sister puts the money up? Because, again, it's not individual. Well, to be clear, they can do that, Your Honor, and there's no limitation on them doing that except for three times. Well, I'm talking about the legal aid alone in terms of the vagueness argument, which I know we haven't really talked about today. So, again, just to the interest, and let's say in terms of the vagueness, there is a question as to whether or not a parent or a sibling could also bail someone out more than three times. How does that further, having that family member pay the bail, how does that further the State's interest as you just articulated it? So my point, Your Honor, was not that it doesn't apply to the family member. I think it certainly does. I think that by putting it at three, the legislature was basically making the determination, this is, you know, you're not going to be bailing somebody out five times in a year, and, honestly, I think the legislature is thinking, if you are, then there might be a problem here. Well, and it's probably in a district court or a state court judge isn't going to grant bail if you're appearing before them five times. No, exactly. So this is my point, is that I don't think that this really affects, it's not going to affect the relative situation almost ever. But I'd also point out that these are all reasonable policy debates to be had, but none of them go to whether this is inherently expressive, and we think that if it's, and because it's not inherently expressive, the court needs to stop there and then not dig into, you know, the policy debates about whether this is good or not. Let me ask you a question about the vagueness issue. The district court found that the cash bond limit clearly applied to the plaintiffs. Does that finding do the facial vagueness challenge? Yes, absolutely. I think there are numerous problems with the vagueness challenge, including that the district court itself said there are competing plausible interpretations. Well, if there are competing plausible interpretations, it's not vague. You just have to do statutory interpretation. But no matter what you think about what any part of this statute, the fact that even plaintiffs don't disagree, that at least much of their conduct is clearly captured here means they cannot challenge it facially because they would have to, you know, they'd have to go beyond the pretty clear black letter case law on this that says if it applies to you, you don't get to point to hypothetical or, you know, outside of this case scenarios to try to argue for vagueness. What about the plaintiff's argument that, sure, it applies to us, but what if, how do we know how to govern ourselves, for instance, if some of our members decide that they are also going to collectively or individually pay someone else's bill? How do we know if that's going to be imputed to us, to our conduct going forward? So, yes, it applies to us, but we don't know to what extent. Yeah, so I think at the very least with these plaintiffs here, they have all acknowledged that, well, we know that once we've done, you know, three times ourselves, then that's a limit on what we can continue to do. So at the very least, it is applying to them in certain circumstances in ways that no one is claiming is vague. But just to get to the substance of Your Honor's question, I don't think that's a very difficult question. I think, you know, the question of what a group is or is not, I don't think it's very hard. It's a, you know, it's a number greater than one with a unified purpose. So it would be someone that, you know, coordinated the bail-paying activity. And the question of whether it's, you know, unquote, imputed to one or the other, I think that's also pretty easy through statutory interpretation. Where is the money coming from? I mean, if you are an individual that just, you know, is working for a nonprofit and drops off the money, okay, then you're not necessarily, you know, it's not necessarily going to be imputed to you. But you can't then get around the statute by just creating, you know, new groups every time. Well, now I'm going to group up with this person and I'm going to group up with that person. It would be a matter of, all right, do you have the unified intent with somebody else to pay bail? That would be imputed to you. But regardless, even if one thinks that that's some kind of difficult statutory interpretation question, and I don't really think it is, but that doesn't make the statute vague. The question is whether there is a core meaning here that you can understand. I think that there's plainly a core meaning that anyone can understand here. Before you sit down, let me, there's also a First Amendment challenge to the surety requirement. And the district court observed that in a cardinal context, regulating how an entity purports itself to the public would not be unusual, but the surety requirement targets charitable speech, not commercial speech. Can you speak to that distinction that the district court was drawing? Yeah. Three quick points there, Your Honor. The first is, I don't even understand the plaintiffs to be relying on this purports language anymore. They seem to have a different theory. The second is, I don't understand the distinction between charitable and business interests here. I don't see any case law that would support that. And the third is, it's not targeting the speech. It's targeting the conduct. And it's saying, if you're telling us you're engaging in the conduct, all right, then you have to get a license. It's no different than the Del Castillo case or the Locke case where you have But the conduct itself, what you're describing as conduct, is itself the solicitation of these donations for the purpose of paying bail. So, you know, I don't think that there is a clear division there. No, Your Honor, the conduct I'm talking about is the paying of bail with fund-raised money. And that's why I think that this is directly analogous to Del Castillo and Locke, where in both of those cases, states were regulating professions or enterprises that clearly involved speech and, in fact, even identified the profession as, you know, for instance, in the case of Del Castillo, these nutritionists or dieticians, you know, they engage in counseling and they engage in advising. That plainly involves speech. But what the court said is, you're not regulating the speech. You're just requiring a license for a particular profession. It so happens that it involves some speech, but you're not regulating that speech per se. And that's plainly the case here, where no one is saying, here's what you can say, here's what you can't say. They're just saying, if you're going to pay bail with fund-raised money, then you have to get a license. That's a pretty normal way of figuring out who has to be licensed. It's, you know, are you telling us you're the person who is going to engage in this conduct? Is that similar to how Georgia regulates professional bail bonds? It's literally the exact same. I mean, I think they just took that language because it's how they define bail bondsmen, is do you hold yourself out as someone who does this for compensation? And so this is really just kind of a filling in that gap. Bail bondsmen are required to be licensed and bail bondsmen are defined as someone who holds themselves out as paying bail for others for compensation. And so this is basically saying, well, if you're doing it with fund-raised money, essentially if you're doing it for free, well, then you also have to be licensed when you're going to engage in this surety practice. You said for free, but when you described the bail bondsmen, you said for profit. Can you just clarify, you're saying even if you are not as a charitable, as a church, not doing this for money, you believe it should still fall under this licensing scheme? Well, it depends, Your Honor, because it has to be with fund-raised money. So if the church just knows that someone is being detained and, you know, it happens, you know, say it's a member of the church or something, and so the governing authority says, you know, we're going to go help this person out, we're going to pay, you know, a cash bond to get this person out. If they're not an operation that just pays with fund-raised money, then fine. But if it is, generally speaking... If it says that we are raising money to bail this person out, then it would be coming to the purview of the statute? I think that, yeah, so if they're engaging in, yes, if they're engaging in kind of the business, as it were, of bailing people out of prison and using fund-raised money to do that, then possibly. I mean, it would depend on the individual facts of the individual case, but as a general matter, in this particular case, what we have are entities that are not at all denying that this is their business, this is what they do, and so even if there's... If they're not in business, they're saying it's their mission, and especially for purposes of the church, it's related to their faith, and so I think that's an important distinction. Yeah, but my point is that in this particular instance, no one is denying that they do, in fact, do the things that require them to be licensed, and so that's my only point here, is I don't think that questions about, well, who might be required to be licensed in other circumstances are particularly relevant in a situation where the plaintiffs are not denying that in this particular situation. Thank you. Thank you, Your Honor. And we will still give you five minutes for rebuttal. We obviously went over time, so if we're still questioning you, we will continue to let you speak as well, but you have 15 minutes. Thank you, Your Honor. Good morning, and may it please the Court. I'm Alexandra Lichtenstein for Appellees Bard Business, John Cole Vodica, and Stephen Williams. As the district court correctly recognized in granting plaintiffs a preliminary injunction, Section 4 of Georgia Senate Bill 63 is riddled with constitutional deficiencies. It is facially too vague for anyone to know how to comply, restricts plaintiffs' expressive conduct, and enacts a facially content and viewpoint-based restriction on bail fund speech soliciting charitable donations in support of their cause. This Court should affirm the preliminary injunction, maintaining the status quo, and preventing this unconstitutional law from going into effect. Do we have a universal injunction problem under Trump v. CASA? I don't believe you do, Your Honor, and that's for a few reasons. First of all, the state has never asked for the scope of the injunction to be modified, even though even before CASA v. Trump, this Court recognized that universal injunctions could be issued only in very narrow circumstances. This is also a different context than that addressed in CASA for two reasons. One, this is a statewide injunction of a state law, which doesn't have the historical or practical problems that the Court identified in CASA, and this Court addressed that issue as recently as May in H.M. Florida O.R.L., addressing the fact that statewide injunctions are much more rooted in our nation's history and, again, don't raise the similar problems of having laws percolate that a universal injunction of a federal law does. But also there is a difference in the First Amendment context that the Supreme Court has consistently recognized. Again, this Court recognized in H.M. Florida and which the Supreme Court did not address or purport in any way to overrule in CASA. In the First Amendment context, there needs to be more breathing room for speech because of the risk that allowing a law like this to go into effect could limit the speech of others. So for all of those reasons, the scope of the injunction is not a problem in this case. Turning to the expressive nature of the conduct, which my colleague focused on for much of his presentation, I think it's helpful to take a step back here and to look at what a reasonable observer would be able to see in the payment of charitable bail without hearing or understanding a single word of speech. The payment of charitable bail is, as the plaintiffs have explained in their declarations and which is unrebutted by the state, a process. It's not a single moment in time when cash changes hands, but it's a long, drawn-out process during which the plaintiffs are engaged in a variety of expressive conduct. So they arrive... So that spectrum, you're saying either that all of the pieces of that are expressive conduct or one piece of expressive conduct carries over to even non-expressive conduct. I just want to be clear. Your Honor, I think the way I would explain it is that the charitable payment of bail is the expressive conduct. That is something that is not a moment in time, but that occurs over time, much like the sharing of meal. As the district court recognized, it does not occur at the moment a bite is taken, but occurs over time. And then the contextual elements that surround that over the course of that time are part of the holistic examination that this court makes under the Food Not Bombs test. So a reasonable observer would be able to see a large group gathering in the parking lot of the jail. They're wearing matching shirts. Perhaps the observer doesn't know what they say, but they can see that they're similar. They're holding signs and banners. They have flowers and gifts. They're live-streaming. They're cheering. They're engaging in dance and other expression. That would indicate to a reasonable observer, okay, something different is going on here, something dissimilar from someone bailing themselves out, someone paying bail for their child or their neighbor. This is a different kind of conduct. Again, at the moment, an individual from one of the plaintiff's organizations goes into the jail to pay the bail. They're recognized by the clerks. They're clearly a repeat player in this space. A reasonable observer would see, again, this is not just someone bailing themselves out, coming to the jail for the first time to bail someone out. There's a distinction here, and I want to make sure I understand. You say the situation that's involved in this case is very different from your neighbor going to bail out his or her son. Do you concede that the neighbor going to pay the bail is not expressive conduct? It would depend on the exact circumstances, Your Honor. Are you sure no one in the parking lot just walks in and pays the bail? So, again, it would depend on all of the context, but it is true. The neighbor's son is arrested. The neighbor walks into jail wearing no T-shirt, no hat, says nothing to the clerk who takes the money, pays the bail. There's nobody waiting in the parking lot. Is that expressive conduct? So, Your Honor, it sounds like, again, in the absence of any contextual circumstances, that a reasonable observer would be able to see to know that this is expressing a message, no, that that might not be an expressive conduct. Tell me what's missing from my hypothetical that is causing you to not say just no. It's unclear to me, Your Honor, whether that individual is paying the bail for a charitable purpose. No, that's it. So, no, I think that that payment of bail would not be expressive, but the Supreme Court's expressive conduct test doesn't demand that the conduct be expressive in all contexts and under all circumstances. So, in this situation, does your argument that the paying of bail is expressive depend upon the people who are in the parking lot, the people wearing the T-shirts who are welcoming the person who is released from bail? Is that parking lot activity what's bringing you under food, not bombs, where you have the people who are saying, we've raised money to bail these people out? Is it depending, is your argument depending upon the parking lot activity? It does not depend upon the parking lot activity, Your Honor. A reasonable observer, again, for the reasons I was listing, seeing someone inside the jail, someone like Mr. Williams or Mr. Vodicka, being recognized, introducing themselves to the person they're bailing out for the first time, walking with them in this religious expression of support and faith, that itself would also be expressive conduct. But the activity that does take place in the parking lot is, again, part of the expressive conduct. It is part of the process of paying bail, which, as, again, plaintiffs explained in their declaration and is unrebutted, is a process that can take all day or all night. And the reasonable observer would see and understand that activity as being linked to the activity that's occurring inside the jail. Simply because it takes place a few feet away doesn't mean that it's not linked. Just as in Food Not Bombs, the fact that individuals who were part of the group were handing out leaflets not directly next to the table, who were inviting people to the meal, again, not directly next to the table, that that conduct took place kind of throughout the park didn't undermine the expressive nature of that conduct. I don't think it presents any sort of problem for you, any factual distinction here, that in Food Not Bombs you have the expressive conduct going on in the public park as part of meal sharing, whereas here you have a separate activity of paying the bail. And then separate and apart from that, there is the communication of the idea, hey, we're doing this for you, we've raised money in a charitable endeavor to bail you out. Your Honor, again, I would push back on that a little bit. The paying of bail is not just the moment inside the jail that the cash changes hands, but it does involve the waiting around for paperwork to be processed, for the person to be released. And so it does encompass that activity that occurs kind of in the parking lot. But no, I don't think that the fact that the activity takes place in a location that is less well-recognized as a traditional public forum like a park does mean that it is inherently not expressive conduct. As the District Court recognized, this factor weighs at most neutrally. The jail is the place where you have to pay bail. It is reserved for that purpose. And even though it is not a traditional public forum, it does, as the court in Food Not Bombs recognized, it is the kind of place that expresses a message about the bail system, how bail works. It is like the park in that circumstance. But again— Just to be clear, too, because I understood when you were speaking earlier in terms of the spectrum, that it also started with fundraising for the money. So how you get the money and then the fact that you use the money for the purpose that you communicated to those who donated the money. What is the connection you would say between that? Yes, Your Honor. So the state attempts to define the expressive conduct here as simply the payment of bail, but that's never been what plaintiffs have identified as their expressive conduct. Their expressive conduct is the charitable payment of bail. And as you noted, the donation of money for a particular cause has long been well recognized as an element of speech. In the Coral Bridge Ministries case, for example, this court recognized that donation to a particular cause has an expressive element to it. And so the fact that this is a charitable donation, that the plaintiffs are acting in the expression of their charitable, religious, value-based beliefs in making these payments, is again another element in this holistic test that indicates that their conduct is very different than the kind of average payment, non-charitable payment of bail for yourself or for, you know, a family member for whom you don't have a charitable purpose. Let me ask you about your vagueness challenge to the cash bond limit. As I noted earlier, the district court concluded that the word group plainly covers the plaintiffs in this case, the individual plaintiffs, and appears to cover barred business. We have a lot of case law, Supreme Court 11th Circuit case law, that says, and this is Hoffman, the United States Supreme Court, that a plaintiff who engages in some conduct that is clearly prescribed cannot complain of the vagueness of the law as applied to the conduct of others, in Catron. If plaintiff's own conduct is clearly prescribed by the terms of the statute, this necessarily precludes a finding of facial vagueness. And finally, Joel, Joel's facial challenge to the statute on vagueness grounds must necessarily fail because his conduct was clearly within the scope of the ordinance prohibition. How does this case law and the district court finding not doom your facial vagueness challenge? Yes, Your Honor, the circumstances here are very different, and I think Hoffman Estates is a great illustration of that. So in Hoffman Estates, the plaintiff acknowledged that the term at issue covered some of the products it sold and that there might be vagueness about whether products sold by others were covered by that term. Here, the word group is inherently vague, and that vagueness infects the entire statute. So the plaintiffs do not know how they can conform their conduct to the law because they do not know when they will be associated with a group and have the payments of other people counted against them, imputed to them, so they can't calculate what their total is and know how to comply with the law. So, you know, in the vagueness context, this court looks to whether an individual knows how to conform their conduct to the law and whether the lack of guidelines and standards mean that enforcement of the law could be arbitrary and discriminatory. Here, both are true. The state has acknowledged that payments made by an individual could be imputed to a group, made by an organization could be imputed to a group, that the payments could be imputed to multiple entities under Sentence 1. And so even if tomorrow the plaintiffs were to stop paying cash bail entirely, they have no guarantee and no way to know whether that would be enough to conform their conduct to the law because, for example, engaging in advocacy activities with a partner like Ebenezer could lead Ebenezer's payments of cash bail to be imputed to Barred Business. Preaching to the church about the charitable bail activity that Mr. Vodicka engages in could lead payments made by individual members of the church to be imputed to him or to the bail fund. Even if they are no longer paying cash bail themselves, they have no way of knowing whether that would conform their conduct to the law and no way of knowing whether those enforcing the law would count them as part of the group. I think that's been very clear from the fact that the state has offered a number of different definitions of what constitutes a group. At some points that it's simply, you know, several people who are together at the same time. At some points that it's individuals who are coordinating together with no further definition of what it means to coordinate. At certain points that it means having a community of purpose or function. Again, with that left undefined. And what the district court held after making a reasonable attempt to interpret the statute to give some meaning to this vague term to apply the ordinary meaning and the canons of construction, the district court determined that there is simply no way within the plain text of the statute to give that word any meaning to offer any way for the plaintiffs and anyone else who would want to pay cash bail under the law to know how they could do so in a way that complied with the law. And that is inherent vagueness that the Constitution does not allow. Well, so I was going to move back to the expressive conduct. So I just wanted to revisit that quickly in terms of making, for myself, what do you understand the state's interest in promoting this law to be other than what they articulated, which is to make sure they show up, which, of course, that's the judge's job when he's setting bail. So what is your understanding of the state's interest other than that? Your Honor, I understand that to be the only interest that the state has put forward in defense of Sentence 1, that they want to ensure that individuals show up at their proceedings. But the number three arbitrarily plucked from thin air, seemingly, that the state has not justified in any way, has no relation to that interest. There are a number of other ways the state could have regulated cash bail payments if they intended to target this. They could have, as occurred in the bail project case in the Seventh Circuit, targeted specific underlying offenses and said that cash bail payments made by third parties were not allowable for those types of things. They could have required certain additional supports, which the plaintiffs already engage in. There is no evidence, the state has not put forward any and has not rebutted the plaintiff's evidence to the contrary, that third-party payments of bail for individuals make it any less likely that they show up. And, in fact, you know, the plaintiffs have entered evidence into the record that over 90 percent of individuals bailed out by the bail project do show up for their proceedings because plaintiffs provide holistic wraparound services that make it all the more likely that people will show up for their proceedings. So the state has not carried its burden to show that the law is tailored in any meaningful way, much less that it survives intermediate scrutiny on Sentence 1. On the Sherry issue, the person in charge to the other provision, what's your best argument for why Del Castillo doesn't govern this issue? Yes, Your Honor. So I think there are two kind of separate points here. Just taking a step back at first, the State insists that Sentence 2 is triggered by some sort of conduct, by the conduct presumably of paying bail. But that is not what the text of Sentence 2 says. Sentence 2 is targeted by the solicitation of donations, which is well recognized by this Court and the Supreme Court as protected activity. That's the Riley case, for example. If the law were targeted at the actual payment of bail, it would be both over- and under-inclusive. It doesn't capture organizations that solicit donations to raise money to pay charitable bail but never actually, for example, raise enough money to pay a single bail. Doesn't it purport to be a charitable bail fund with the purpose of soliciting donations to use for securing the release of accused persons? I'm not sure in there it says you actually have to raise enough money. No. I'm sorry, Your Honor. I may have misspoken. It would capture an organization that did raise funds to pay charitable bail but never actually made a single payment of bail. And it would not capture an organization that was funded by a single wealthy individual, for example, did pay significant amounts of cash bail for charitable purposes but never solicited donations for that purpose. So it is clear that the activity that is targeted here is solicitation, which, again, the Supreme Court has consistently said is protected speech and has to survive a strict scrutiny analysis in order to be allowable. The Del Castillo case and the similar cases that the State identifies first occur in the very different context of commercial activity, which, again, the Supreme Court has long recognized has a hardier ability or protection of speech because of the profit motive that underlies commercial activity. There is no such profit motive here where the activity that is explicitly targeted is charitable. And second, as the Supreme Court said in the Thompson case, it cannot be the State's first effort to target speech if that, you know, is not what actually advances their interests. Here the State's stated interests, again, are about having people show up for their proceedings, regulating people who pay bail for others. But as I previously explained, that is not captured by the language of the provision. The language of the provision captures the act of soliciting donations. It does not capture all of the act of paying charitable bail, and it captures some of the act of solicitation that never results in paying a charitable bail. So under the Thompson case, that lack of targeting is fatal to this law, even if it were not, you know, facially targeting solicitation, which, again, requires that it survive a strict scrutiny analysis that the State simply hasn't carried its burden to prove. If Your Honors have no further questions, we would urge the Court to affirm the District Court's entry of the preliminary injunction. Thank you. Mr. Kelly, you still have five minutes. What should be made of the commercial versus charitable distinction that opposing counsel just ended with? Your Honor, that was one of the points I was going to make. Del Castillo says there's no First Amendment scrutiny at all. This was not on the basis of, well, because you're commercial, somehow the State has satisfied its burden under commercial speech doctrines. The point is that if you are in the practice of doing this particular thing, then you have to get a license. And the fact that this particular thing involves speech doesn't mean that you somehow get outside of all government regulation. But just to take the points opposing counsel made one by one, first of all, they don't get to identify what conduct is at issue. The conduct that's at issue is the conduct that's being regulated. They don't get to say, well, we do all this other expressive stuff, too, and we're going to make that part of the conduct. The conduct is what is being regulated. Harvard could have argued and did, well, we have committee meetings, and then we send out emails, and there's a whole bunch of stuff that goes into this other than just denying military recruiters access to campus. And the Supreme Court said not only is that stuff not relevant, it's actually relevant against you because it points out that all this other expressive stuff you need just shows that the actual conduct at issue, the actual thing being regulated is not itself inherently expressive. And I think counsel struggles to try to disentangle the ordinary bail bondsman or relative paying bond from what, well, you know, one of the plaintiffs is doing. It goes to show that outside of someone explaining to you the difference, there is no difference. And if you have to have the difference explained to you, it's not inherently expressive. And the reasonable observer doesn't know any of that, Your Honor. The person who's standing there watching you pay bail doesn't know that a church raised this money unless you tell them. And Judge Jordan's opinion, although I think it goes to the absolute extreme of what Rumsfeld would even potentially allow, it was very careful to make the point that we can't look at the actual content of any expressive speech around this. We can't be going to, okay, this person is explaining to us what this means. We can't read what's on the banners, for instance. And so I think it's very important that the court not look at food not bombs and somehow come away from this that, well, because the context matters, somehow Rumsfeld's prescription against looking at surrounding expression somehow no longer applies. You seem to want to draw a very narrow view of the context. And the food not bombs case, again, your opposing counsel made the point that all of the activity that was happening that the court considered wasn't directly next to the table. You can consider some of what was going on in the environment. And here everything that's happening is in the context of the jail. It might not be at the specific counter where the person is actually paying the bail, but it's still in the context of the jail, which seems to be a fairly confined context, like a park, setting aside the public forum aspect of it. It's still fairly confined. So, again, why aren't those activities that are happening in very close proximity to the jail not relevant to our consideration? Your Honor, in food not bombs not one, the opinion was very clear that someone who saw this would see all these other things because they were, in fact, all part of the same conduct going on. Someone who's watching someone pay bail is not seeing the church raising money. They're not seeing the social media posts. They're not seeing the people outside. And even if they were, the only value that those people outside are bringing to the speech, which is the very thing that Rumsfeld says you cannot look to in order to understand this conduct. So whatever the context in food not bombs one was, it was closely tied to what was actually going on and it was wildly different, involving the most public of forums and so on and so forth. And it was not saying, well, because there's a protest nearby that explains things, therefore you would know what this means. I mean, Rumsfeld completely precludes the court's ability to do that. In the limited time I have left, I just want to make a couple of points. On vagueness, we have never come up with alternate definitions. In fact, opposing counsel says that at one point in the hearing below we said, well, maybe it's just people who arrived at the same point. We were literally rejecting that position. Counsel for the State was saying it's not that. And opposing counsel has just misunderstood the transcript on that point. It has always been our position that it's someone with a unified purpose. So it's we're getting together to pay this person's bail. It's not just, oh, I exhorted someone to generally do something or, you know, something along those lines one way or the other. It's plainly amenable to statutory interpretation. It is not inherently vague. When it comes to the Del Castillo questions and the surety requirement, I think it's very plain. If you look at it, it applies the requirements of bail bondsmen, I think, in the context. It's very clear. This is about conduct. Like, yes, it's defining it in a certain way to make it easier because you're telling us you're engaged in the conduct, but these requirements only apply to people who are, in fact, trying to post bonds. And my last point is just on the State's interest. We don't think it's just the judge's job to worry about bail. States, every State in the country has licensure requirements for bail bondsmen. They have various regulations around bail. It's not simply the judge's job, and the legislature has valid interests here. But that's also not relevant. The point here is whether or not this is inherently expressive or not, whether or not the Court happens to agree with the policy judgments the legislature made. Happy to answer any other questions that the Court has. Thank you, Your Honor. Thank you. Thank you both. We have the case under advisement. Our third case is Natural Lands LLC.